```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

CECILIA ST. PIERRE, et al.,   )
                              )
        Plaintiffs,           )
                              )
        v.                    )   Civil Action No. 03-1057 (GK)
                              )
GALE A. NORTON, et al.,       )
                              )
        Defendants.           )
```

## MEMORANDUM OPINION

Plaintiffs, Cecilia St. Pierre and Leonard L. Prescott, are members of the Shakopee Mdewakanton (Dakota) Sioux Community ("SMSC", "Tribe" or "Community"). Defendants are Gale A. Norton, Secretary of the United States Department of the Interior, and David Anderson, Assistant Secretary – Indian Affairs of the Bureau of Indian Affairs ("BIA") of the United States Department of the Interior ("DOI"). Plaintiffs bring suit under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, challenging Defendants' decisions and actions with respect to the Tribe's membership.

This matter is now before the Court on Defendants' Motion for Judgment on the Pleadings on Plaintiffs' Second Amended Complaint ("Defendants' Motion"), [**#24**]. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, Defendants' Motion is **granted**.

**I.    BACKGROUND**[1]

Plaintiffs are individual members of the Shakopee Mdewakanton (Dakota) Sioux Community ("SMSC"), an Indian tribe federally recognized under the Indian Reorganization Act, 25 U.S.C. §§ 461-479. The SMSC controls the Mystic Lake Casino, which is "one of the largest gambling venues in the United States." Pls.' Second Am. Compl. ("Compl.") ¶ 16. In this lawsuit, Plaintiffs allege that Defendants' actions "allowed unqualified [Tribe] members to illegally gain control of the Community and the substantial gaming revenues of the Community." Id. at 2.

Plaintiffs allege that in 1991, in an election in which unqualified individuals were wrongly allowed to vote, Stanley Crooks was elected Chairman of the Tribe. Id. ¶ 16. According to Plaintiffs, from this time forward, "Mr. Crooks and his allies embarked on an illegal and unconstitutional scheme to wrest control of the Community from the majority of the true Mdewakanton Sioux and to take control of the Community's gaming resources." Id. ¶ 18.

Plaintiffs' claims stem from a dispute regarding the interpretation of two provisions of the Tribe's Constitution. The

---

[1] The following facts, none of which are disputed, are taken from Plaintiffs' Second Amended Complaint or official court rulings in other cases, or official agency rulings by the Department of the Interior.

first, Article II, Section 1, provides that members of the Tribe shall consist of:

> (a) All persons of Mdewakanton Sioux Indian blood, not members of any other Indian tribe, band or group, whose names appear on the 1969 census roll of Mdewakanton Sioux residents of the Prior Lake Reservation, Minnesota, prepared specifically for the purpose of organizing the Shakopee Mdewakanton Sioux Community and approved by the Secretary of the Interior.
>
> (b) All children of at least one-fourth (1/4) degree Mdewakanton Sioux Indian blood born to an enrolled member of the Shakopee Mdewakanton Sioux Community.
>
> (c) All descendants of at least one fourth (1/4) degree Mdewakanton Sioux Indian blood who can trace their Mdewakanton Sioux Indian blood to the Mdewakanton Sioux Indians who resided in Minnesota on May 20, 1886, <u>Provided</u>, they apply for membership and are found qualified by the governing body, and provided further, they are not enrolled as members of some other tribe or band of Indians.

<u>Id.</u> ¶ 7.

The second provision, Article II, Section 2, provides that the General Council "shall have power to pass resolutions or ordinances, subject to the approval of the Secretary of the Interior, governing future membership, adoptions and loss of membership." Defs.' Ex. A at 1; <u>see</u> Compl. ¶ 8. Plaintiffs' position is that adoption ordinances, which have been passed under this section, may not eliminate the 1/4 degree blood quantum requirement contained in Article II, Section I.

In 1993 the SMSC, led by Crooks, passed an adoption ordinance under Article II, Section 2 which attempted to eliminate the 1/4 degree blood quantum requirement for membership in the Tribe.

Compl. ¶ 19 ("First Adoption Ordinance"). The BIA disapproved the ordinance and it never became effective. Id. ¶ 20.

On November 30, 1993, the SMSC enacted a second adoption ordinance ("Second Adoption Ordinance") which also attempted to eliminate the 1/4 degree blood quantum requirement. Again, it was submitted to the BIA and disapproved. Id. ¶ 21. Crooks appealed this decision, and in February 1995, an administrative law judge of the Interior Board of Indian Appeals ("IBIA") reversed the Area Director's disapproval of the Second Adoption Ordinance and remanded with instructions to the Area Director to approve it. Id. ¶ 22.

In that litigation, the SMSC and the BIA disagreed as to whether an adoption ordinance passed under Article II, Section II of the tribal Constitution could eliminate the 1/4 degree blood quantum requirement. The administrative law judge of the IBIA reasoned that since both the SMSC's and the BIA's interpretations of the tribal Constitution were reasonable, deference should be given to the SMSC's interpretation under the "rule requiring deference to the tribe's interpretation of its own laws," especially on matters related to tribal membership. Shakopee Mdewakanton Sioux Community v. Acting Minneapolis Area Director, BIA, 27 IBIA 163, 171-72 (1995). Plaintiffs were not permitted to intervene in that appeal.

In July 1996, Plaintiff St. Pierre and her sister Winifred Feezor filed suit in this Court challenging, among other things, the IBIA's approval of the Second Adoption Ordinance. <u>Feezor v. Babbitt</u>, 953 F. Supp. 1 (D.D.C. 1996). Judge James Robertson remanded the case to the DOI for supplementation of the administrative record on certain issues, one of which was why the IBIA decision overturning the Area Director's decision occurred after the 90-day time period during which such IBIA action is permitted. <u>Id.</u> at 6.

On May 23, 1997, before the DOI had responded to Judge Robertson's remand, the SMSC passed a third adoption ordinance ("Third Adoption Ordinance"), which was substantially similar to the Second Adoption Ordinance. Compl. ¶ 32. The Third Adoption Ordinance was submitted to the BIA, approved, and went into effect. <u>Id.</u>

On February 2, 1999, in response to Judge Robertson's remand in <u>Feezor</u>, then Assistant Secretary – Indian Affairs Kevin Gover reversed the IBIA's approval of the Second Adoption Ordinance because the 90-day time period in which to review the Ordinance had expired. As a result, the Second Ordinance did not go into effect. Compl. ¶ 34; Defs.' Ex. O. With this reversal, however, Defendants' positions with respect to the Second and Third Adoption Ordinances, which the parties agree were substantially similar, were, on their face, in conflict.

Thereafter, on December 8, 1999, Plaintiffs in Feezor returned to Judge Robertson with a Motion to Enforce and Reopen for Amended Relief. Judge Robertson denied that Motion on September 30, 2000.

Plaintiffs St. Pierre and Feezor also challenged the validity of the Second and Third Adoption Ordinances in tribal court, making many of the same arguments they make here, and lost. Defs.' Ex. H, Feezor v. SMSC Bus. Council, No. 311-98 (SMSC Tr. St. May 19, 1999). The tribal court held that "the [Third Adoption] Ordinance was validly enacted by the Community." Id. at 14. It also rejected Plaintiffs' argument that the Third Adoption Ordinance was invalid pursuant to Gover's rejection of the Second Adoption Ordinance. The tribal court reasoned that "since the interpretation of the Community Constitution is clearly a matter of tribal law, and this court has jurisdiction to interpret the Community Constitution pursuant to Section II of the Tribal Court Ordinance, this Court, not the Assistant Secretary – Indian Affairs, is the proper forum for final interpretation of the Community Constitution."[2] Id. at 18. Plaintiffs did not appeal this 1999 tribal court decision.

---

[2] Indeed, Gover himself agreed with this conclusion. In his decision following Judge Robertson's remand, he noted that part of the reason he was not reaching the more substantive issues remanded to the agency was because of the "strong policy of avoiding unnecessary federal intrusion into tribal affairs." Defs.' Ex. O at 12.

In this lawsuit, filed in 2003, Plaintiffs again allege that "the adoption policies that are presently being followed, but which were illegally instituted, patently violate the Community's Constitution by denying the enrollment of many who are qualified and by allowing unqualified members to control every decision regarding the Community." Compl. at 2. They base their APA claims on the inconsistency in Defendants' final positions with respect to the Second and Third Adoption Ordinances.[3]

## II.   STANDARD OF REVIEW

The standard of review for a motion for judgment on the pleadings is essentially the same as that for a motion to dismiss. Jung v. Ass'n of Am. Medical Colleges, 339 F. Supp. 2d 26, 35 (D.D.C. 2004). Accordingly, the factual allegations of the complaint must be presumed true and liberally construed in favor of the plaintiff. Shear v. Nat'l Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979).

When reviewing actions by an administrative agency, courts are bound by the highly deferential standard embodied by the APA. 5 U.S.C. § 706(2)(A). Under this standard an agency action may be set aside only if it is "arbitrary, capricious, an abuse of

---

[3] It is very difficult to understand why counsel failed to inform the Clerk of Court, pursuant to LCvR 40.5(b) and LCvR 40.5(c), of the relationship between this case and Feezor. While the cases were not technically related, under LCvR 40.5(a)(3), because Feezor was no longer pending on the merits, Count III of this Complaint clearly states a claim of non-compliance with Judge Robertson's decision in that case.

discretion, or otherwise not in accordance with law." Id. If the "agency's reasons and policy choices . . . conform to 'certain minimal standards of rationality'. . . the [agency decision] is reasonable and must be upheld." Small Refiner Lead Phase-Down Task Force v. EPA, 705 F.2d 506, 521 (D.C. Cir. 1983) (citation omitted).

**III. ANALYSIS**

    **A.    Count I of Plaintiffs' Second Amended Complaint Must Be Dismissed Under FRCP 19**

Count I of Plaintiffs' Second Amended Complaint, which is titled "Violation of the Administrative Procedures [sic] Act Due to Defendants' Departure from Policy Without Valid Supporting Reasons," challenges Defendants' failure or refusal "to address and correct their inconsistent decisions rendered regarding the Second and Third Adoption Ordinances." Compl. ¶ 49. Defendants seek dismissal of Count I for failure to join an indispensable party under Federal Rule of Civil Procedure 19 ("Rule 19"), as well as preclusion under the doctrine of res judicata, addressed infra.[4]

Defendants argue that "[s]ince the obvious intent of the Plaintiffs is to change the Tribe's chosen method for adopting new tribal members – a method that the Tribe has already employed for several years with approval from its own judicial system – it is

---

    [4] Defendants' argument regarding lack of subject matter jurisdiction need not be addressed in light of the Court's rulings on Rule 19 and issue preclusion.

plain that this case cannot proceed in fairness without the Tribe as a party." Defs.' Mot. at 5.[5] The Court agrees.

Under Rule 19, the Court must first determine whether the Tribe is a necessary party to the lawsuit. The Tribe is a necessary party if, "(1) in [its] absence complete relief cannot be accorded among those already parties, or (2) [it] claims an interest relating to the subject of the action and is so situated that the disposition of the action in [its] absence may (i) as a practical matter impair or impede [its] ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Fed. R. Civ. P. 19(a).

If the Court concludes that the Tribe is a necessary party under Rule 19(a), but joinder is nonetheless not feasible, the Court must determine whether "in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed. R. Civ. P. 19(b). In making the indispensability

---

[5] Significantly, the relief Plaintiffs request in their Complaint includes, among other things, "ordering that the BIA's May 23, 1997 decision approving the Third Adoption Ordinance be remanded to the Department <u>with instructions that it be rescinded</u> because it is inconsistent with the Department's decision regarding the substantively identical Second Adoption Ordinance," and "remanding the matter back to the Defendants <u>with instructions that the Defendants issue a decision regarding the Third Adoption Ordinance which is consistent with the Defendants' disapproval of the Second Adoption Ordinance</u>." Compl. at 25 (emphasis added).

determination, the Court considers the following factors: "first, to what extent a judgment rendered in the [Tribe's] absence might be prejudicial to the [Tribe] or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the [Tribe's] absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Id.

The Court concludes that the Tribe is a necessary party under Rule 19(a)(2)(i). A judgment rendered in its absence would certainly "impair or impede the [Tribe's] ability to protect [its] interest," given that Plaintiffs request relief which would completely reverse current tribal law regarding membership. Moreover, the Tribe has a federally recognized interest in maintaining and protecting its sovereignty, which includes its ability to self-govern and determine the criteria for tribal membership. See Smith v. Babbitt, 875 F. Supp. 1353, 1370 (D. Minn. 1995) (finding that "intruding in the Community's electoral processes," would "fundamentally impair[] the Community's sovereign power of self-governance and self-determination"); Smith v. Babbitt, 100 F.3d 556, 559 (8th Cir. 1996) (affirming the district court's ruling, at 875 F. Supp. 1370, in favor of defendants for lack of jurisdiction and noting that "there is perhaps no greater

intrusion upon tribal sovereignty than for a federal court to interfere with a sovereign tribe's membership determinations.").[6]

Finally, the Tribe has a substantial interest in protecting the rulings of its judicial system from collateral attack. The tribal court has already ruled that persons adopted pursuant to the Third Adoption Ordinance are full members of the Community. Feezor, et al. v. SMSC Bus. Council, No. 311-98 at 33 (SMSC Tr. St. May 19, 1999); see also SMSC Amicus Br. at 6 (describing as "critical" the Tribe's "interests in safeguarding its laws from impermissible collateral attack in federal court"). Accordingly, the Tribe is a necessary party to this lawsuit under Rule 19.

Although the Tribe is a necessary party to this lawsuit, joinder is not feasible because the Tribe has not consented to be sued. As the Supreme Court held in Santa Clara Pueblo v. Martinez, 436 U.S. 49, 51 (1978), a tribe is immune from federal court jurisdiction in disputes regarding challenges to membership in the tribe. See also Montana v. United States, 450 U.S. 544, 564 (1981). This immunity flows from the fact that a "tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community." Santa Clara Pueblo, 436 U.S. at 72 n. 32. Because

---

[6] Plaintiffs St. Pierre and Prescott were also plaintiffs in the Smith v. Babbitt line of cases, in which they made many of the same arguments regarding tribal membership that they make here.

11

the Tribe has not consented to suit in this case, it is protected by sovereign immunity and cannot be joined.  Since the Tribe is a necessary party, but joinder is not feasible, the Court must then determine whether, "in equity and good conscience," under Rule 19(b), the lawsuit can go forward without it.

Applying the factors to be considered under Rule 19(b), the Court concludes that this case cannot move forward without the Tribe.  Most importantly, a judgment for Plaintiffs would undoubtedly be prejudicial to the Tribe.  The ruling would essentially reverse current tribal law regarding membership determinations, which has been in place for several years, and could drastically alter the current makeup of the Tribe.  Such a ruling would also totally undermine the Tribe's authority to make independent membership determinations without federal interference. See Montana, 450 U.S. at 564.

Second, it is difficult to imagine any way in which the Court could shape relief so as not to prejudice the Tribe.  The ruling Plaintiffs request goes straight to the heart of the Tribe's internal governance.  As Defendants note, "[t]he actions of concern to the Plaintiffs are the actions of the absent Tribe."  Defs.' Mot. at 7; see also Davis v. United States, 199 F. Supp. 2d 1164, 1177 (W.D. Okla. 2002) ("No matter how the remedy is shaped, essentially the Court will be modifying the Tribe's policies and ordinances.  Further, the Court finds there are no protective

12

provisions which could be included in the judgment which would prevent trampling on the Seminole Nation's sovereign right to make its own laws and be ruled by them.").

The third factor under Rule 19(b, "whether a judgment rendered in the [Tribe's] absence will be adequate," also weighs in favor of dismissal of Count I.  Even if the Court were to grant Plaintiffs' requested relief, the Tribe itself, as a non-party to this lawsuit, would not be bound by the Court's Order.  Thus, the Tribe would likely file its own suit to enforce its right to determine membership issues, perhaps in a different jurisdiction. Conflicting rulings and resulting obligations could well result. The Court's judgment, therefore, would be adequate only to the extent that the Tribe does not challenge it.

Finally, with respect to the fourth factor under Rule 19(b), Plaintiffs argue that if the case is dismissed for nonjoinder, they will have "no forum" in which to litigate their claims.  Pls.' Opp'n at 36.  This argument is incorrect.  As explained above, Plaintiffs have already litigated this issue in tribal court, which is the proper forum for this dispute.  Feezor, et al. v. SMSC Bus. Council, No. 311-98 at 33 (SMSC Tr. St. May 19, 1999); Defs.' Reply at 10.  Plaintiffs had a forum, used it on several occasions, and lost. In Santa Clara, the Supreme Court emphasized that "[t]ribal courts have repeatedly been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personal

and property interests of both Indians and non-Indians." 436 U.S. at 65-66. As the Ninth Circuit noted, "[t]he issue is not whether the plaintiffs' claims would be successful in these tribal forums, but only whether tribal forums exist that could potentially resolve the plaintiffs' claims." Lewis v. Norton, 424 F.3d 959, 962 (9th Cir. 2005).

Moreover, while it is true that courts must be "extra cautious in dismissing a case for nonjoinder where the plaintiff will not have an adequate remedy elsewhere," dismissal pursuant to the policy of tribal immunity is "less troublesome" than dismissal in other cases. Wichita & Affiliated Tribes of Oklahoma v. Hodel, 788 F.2d 765, 777 (D.C. Cir. 1986) (internal citations omitted); see also Moore's Fed. Practice ¶ 19.15 at 19-266 n.6 (1984) (immunity "may be viewed as one of those interests 'compelling by themselves.'").

Accordingly, because none of these factors weighs heavily in Plaintiffs' favor, the Court concludes that "in equity and good conscience," this case cannot go forward without the Tribe as a party. As such, Count I must be **dismissed**.

    **B.   Counts I and II of Plaintiffs' Second Amended Complaint Must Be Dismissed Under the Doctrine of Issue Preclusion**

In Count II Plaintiffs allege that Defendants failed to comply with Judge Robertson's remand order in Feezor v. Babbitt, 953 F. Supp. 1 (D.D.C. 1996). Compl. ¶ 61. Defendants argue that both Counts I and II must be dismissed under the doctrines of res

<u>judicata</u> and issue preclusion, because the issues presented in this case have already been litigated and decided in Judge Robertson's litigation, as well as others.  Defs.' Mot. at 42.

The rule of issue preclusion is as follows:  "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same claim or a different claim."  Restatement (Second) of Judgments § 27.

Defendants cite at least five different pieces of litigation, in addition to this one, in which one or both of these Plaintiffs have litigated the same intra-tribal membership dispute which is at the heart of the allegations relied upon in Count I.  Defs. Mot. pp. 24-40.  In each of those extended pieces of litigation, some of which went through appellate review, one or both of these Plaintiffs or individuals representing their viewpoint, have sought -- but not achieved -- the same fundamental goal, namely, a change in the Tribe's established procedures for adding new members by virtue of adoption.  These cases have all presented the same nucleus of facts, the same historical background, and the same legal issues as to the proper interpretation of the Tribe's Constitution.

Plaintiffs have had "their day in court"; indeed, it is fair to say they have had "many days in many courts."  The issues have

been fully litigated and decided and, therefore, Count I must be **dismissed**.

In Count II of the Second Amended Complaint, which consists of only paragraphs 60 and 61, Plaintiffs allege that the Defendants "have failed to comply with the remand order of Judge Robertson...." Second Complaint at 24, ¶ 61. On December 8, 1999, the Feezor plaintiffs, including Plaintiff St. Pierre, filed a Motion to Enforce and Reopen for Amended Relief, in which they argued exactly what they argue in this case in Count II – that the Department had not determined whether the Second Adoption Ordinance was properly enacted under the Constitution and that the passing of the Third Adoption Ordinance contravened Judge Robertson's remand order. See Defs.' Mot. at 41, Ex. Q. On September 30, 2000, Judge Robertson denied the motion, after it had been fully briefed.

There is no question that the substance of Plaintiffs' claim in Count II should have been presented to the Judge whose order was allegedly not complied with, namely, Judge Robertson. Indeed, that is what Plaintiffs did, albeit unsuccessfully.

For all these reasons, Plaintiffs are precluded from re-litigating this claim in the present case, and Count II must be **dismissed**.

### C. Count III of Plaintiffs' Second Amended Complaint Must Be Dismissed as Moot

In Count III, Plaintiffs allege that Defendants unreasonably delayed blood quantum determinations in violation of 5 U.S.C. §

706(1), which allows the Court to "compel agency action unlawfully withheld or unreasonably delayed." Compl. ¶¶ 63-64. Plaintiffs seek an Order requiring "Defendants to forthwith make a final determination with respect to all pending blood quantum determinations of the Community." Id. at 26.

Defendants argue that Plaintiffs' claim is moot because Defendants made the final blood quantum determinations on July 14, 2004. Defs.' Mot. at 43. In support of their argument, Defendants provided the Principal Deputy Assistant Secretary – Indian Affairs' Notice of Final Decision regarding blood quantum determinations, which states that the decisions made therein "are final for the Department of the Interior." See Defs.' Ex. S. Defendants further represented that "[n]o other blood quantum determinations remain pending." Defs.' Mot. at 43 n.28.

A court no longer has jurisdiction to hear a claim when "the question sought to be adjudicated has been mooted by subsequent developments . . . ." NRDC v. U.S. Reg. Comm'n, 680 F.2d 810, 814 (D.C. Cir. 1982) (citing Flast v. Cohen, 392 U.S. 83, 95 (1968) (footnotes omitted)). In this Circuit, a claim for unlawful delay of agency action becomes moot once the agency takes the requested action. Shoreham-Wading River Cent. Sch. Dist. v. U.S. Nuclear Reg. Comm'n, 931 F.2d 102, 104 (D.C. Cir. 1991).

In their Opposition, Plaintiffs do not dispute that the final blood quantum determinations were made, but rather argue that they

17

were made improperly. However, the sole relief requested in Plaintiffs' Complaint with respect to Count III is that Defendants make the blood quantum determinations. The Court is satisfied that Defendants have done so. Accordingly, Count III must be **dismissed** as moot.

**IV.  CONCLUSION**

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings, [**#24**], is **granted**, and Plaintiffs' Second Amended Complaint is **dismissed** in its entirety.

An Order will issue with this Memorandum Opinion.

July 31, 2007

/s/
Gladys Kessler
U.S. District Judge